**UNITED STATES DISTRICT COURT**       **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ROBIN DENNIS PERRY SHIELDS, | § | |
| *Individually and as next of friend of John Doe*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:24-CV-171 |
| | § | |
| PORT ARTHUR INDEPENDENT SCHOOL | § | |
| DISTRICT, MARK PORTERIE, and | § | |
| MONIQUE BIENVENUE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants Port Arthur Independent School District ("PAISD"), Superintendent Dr. Mark Porterie ("Porterie"), and Monique Bienvenue's ("Bienvenue") (collectively "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (#26).  Also pending before the court is Plaintiff Robin Dennis Perry Shields's ("Shields") Amended Motion to Extend Time to Respond to Defendants' Motion to Dismiss (#30).  The court GRANTS Shields's Amended Motion to Extend Time to Respond to Defendants' Motion to Dismiss.  Accordingly, the court will consider Shields's Response (#31), Defendants' Reply (#32), and Shields's Sur-reply (#33).  Having considered Defendants' motion to dismiss, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be granted.

I.     Background

Shields, individually and as next friend of John Doe ("Doe"), brings this lawsuit against PAISD and against Porterie and Bienvenue in their individual capacities.  Shields claims that her son, Doe, is "non-verbal, autistic, and has sickle cell anemia."  Shields contends that, during the times relevant to this lawsuit, Doe was enrolled in PAISD's special education ("SPED") program at Memorial High School in Port Arthur, Texas.  Bienvenue and Michael Oliver ("Oliver") were Doe's SPED teachers and Porterie was the Superintendent of PAISD.  In her Second Amended Complaint, Shields alleges that Bienvenue engaged in a pattern of physical and emotional abuse toward Doe.  Shields also asserts that PAISD, as well as Porterie, acted with deliberate indifference by failing to prevent, investigate, or address the alleged misconduct.  Shields identifies several events during which she contends Bienvenue acted inappropriately towards Doe.  Specifically, Shields avers that on May 13, 2022,[1] Bienvenue hit Doe with a closed fist and pushed him during a fire drill at Memorial High School.  Shields also contends that Doe sprained his ankle on two separate occasions while under the supervision of Bienvenue and that the cause of the injuries was never explained.

Shields further avers that Bienvenue displayed dishonest behavior on multiple occasions.  For instance, Shields asserts that during the 2020-2021 academic year, school staff called Shields and told her that she needed to come to the school.  When Shields arrived, Bienvenue was with Doe in the school's hallway.  When Doe walked past Bienvenue, he slapped at Bienvenue's pocket.  At first, Bienvenue denied having anything in her pocket, but she ultimately admitted to having Doe's cellular telephone there and returned it to Shields.  On another occasion, Shields

---

[1] Doe's date of birth is May 6, 2002, making him 20 years old at the time of this incident.

contends that Bienvenue fabricated a story about Shields having an argument with a school security officer, which resulted in Shields being prevented from dropping off and picking up Doe from the back entrance to Memorial High School.

Shields also asserts that Bienvenue displayed inappropriate behavior toward other SPED students.  Specifically, Shields alleges that on or about September 22, 2021, Bienvenue flipped over a table, ripped up another student's papers, and threw the contents of the student's backpack onto the floor.[2]

Shields's Second Amended Complaint includes causes of action for violations of the Americans with Disabilities Act ("ADA") against PAISD, as well as claims under 42 U.S.C. § 1983, including a First Amendment retaliation cause of action against "Defendants," and equal protection and substantive due process claims against Porterie and Bienvenue.  In addition, the Second Amended Complaint asserts a state law claim for intentional infliction of emotional distress against Bienvenue.[3]  Shields states that she is suing on behalf of herself and her disabled son, "Doe."

---

[2] While Shields's pleading merely refers to "the student" when describing this incident, the attachments to her Second Amended Complaint clarify that this interaction was with a student other than Doe.

[3] The Second Amended Complaint also states that this court has federal question jurisdiction, in part, due to "Plaintiffs' Title IX claims."  Title IX, 20 U.S.C. § 1681 *et seq.*, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The Second Amended Complaint makes no other mention of Title IX or additional reference to gender discrimination.  Accordingly, the court concludes that the inclusion of Title IX in the pleadings' jurisdictional statement is simply a typographical error.

II.    Analysis

A.    Motion to Dismiss Standard

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)); *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 896 (5th Cir. 2022); *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *accord Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2019). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, 582 U.S. 548, 550 (2017); *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024), *cert. denied sub nom. Benfer v. Baytown*, No. 24-823, 2025 WL 663718 (U.S. Mar. 3, 2025); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021);

4

*IberiaBank Corp.*, 953 F.3d at 345 (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)). The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022); *Modelist v. Miller*, 445 F. App'x 737, 739 (5th Cir. 2011); *see Damond*, 127 F.4th at 938 ("A claim is . . . frivolous when it 'lacks an arguable basis either in law or in fact.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)); *Damond*, 127 F.4th at 938; *Ramming*, 281 F.3d at 161. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Willis v. W. Power Sports, Inc.*, No. 23-10687, 2024 WL 448354, at *1 (5th Cir. Feb. 6, 2024); *Spano ex rel. C.S.*, 65 F.4th at 262; *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022); *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 355. Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Walker*, 938 F.3d at 734 (quoting *United States ex rel. Grubbs*

5

*v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Damond*, 127 F.4th at 937-38 (noting that

a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)); *King*,

46 F.4th at 355.

      Generally, the court may not look beyond the four corners of the plaintiff's pleadings.

*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *see King*, 46 F.4th at 356;

*Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *Hicks v. Lingle*, 370 F. App'x 497, 498

(5th Cir. 2010).  The court may, however, consider matters that are outside the pleadings if those

materials are matters of public record.  *Cox v. Richards*, 761 F. App'x 244, 248 (5th Cir. 2019)

(holding the district court's consideration of publicly available records in plaintiff's prior court

proceedings on a 12(b)(6) motion to dismiss was proper); *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th

Cir. 2017) (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)); *see Pie Dev.,

L.L.C. v. Pie Carrier Holdings, Inc.*, 128 F.4th 657, 661 (5th Cir. 2025).  The court may also

consider "documents attached to the complaint, and any documents attached to the motion to

dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.),

L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Innova Hosp. San Antonio,

L.P.*, 892 F.3d at 726 ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its

proper attachments, 'documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice.'" (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th

Cir. 2011))); *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012); *Funk v. Stryker

Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

B.    <u>Section 1983</u>

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023); *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017); *Brown v. Pouncy*, 93 F.4th 331, 333 (5th Cir.), *cert. denied*, 145 S. Ct. 170 (2024); *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 371 (5th Cir. 2018). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *accord Connick v. Thompson*, 563 U.S. 51, 60 (2011).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *4 (5th Cir. June 10, 2024); *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 395 n.39 (5th Cir. 2020); *see DeVillier v. Texas*, 601 U.S. 285, 291 (2024).

A claim under 42 U.S.C. § 1983 has two foundational elements:  "a violation of the Constitution or of federal law, and . . . that the violation was committed by someone acting under color of state law."  *Webb v. Town of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019)); *accord Gomez v. Galman*, 18 F.4th 769, 775

(5th Cir. 2021); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687-88 (5th Cir. 2017). A § 1983 complainant must support her claim with specific facts and may not simply rely on conclusory allegations. *Baughman v. Hickman*, 935 F.3d 302, 310 (5th Cir. 2019) (citing *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)); *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010).

### 1.    Fourteenth Amendment Substantive Due Process

Shields contends that Porterie and Bienvenue violated Doe's substantive due process rights to be free from harm to his bodily integrity under the Due Process Clause of the Fourteenth Amendment. The United States Court of Appeals for the Fifth Circuit has recognized a substantive due process right to be free from state-occasioned damage to a person's bodily integrity under certain circumstances. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-51 (5th Cir. 1994); *Doe v. S&S Consol. Indep. Sch. Dist.*, 149 F. Supp. 2d 274, 295 (E.D. Tex. 2001). Indeed, the Supreme Court has held that "corporal punishment in public schools implicates a constitutionally protected liberty interest." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). The State may, however, impose sufficient post-punishment safeguards to satisfy due process concerns. *Marquez v. Garnett*, 567 F. App'x 214, 217 (5th Cir. 2014) (citing *Ingraham*, 430 U.S. 651, 672, 682). As Defendants note, the Fifth Circuit has held:

> [I]njuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause *if* the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions. . . . [S]tates that affirmatively proscribe and remedy mistreatment of students by educators do not, by definition, act "arbitrarily," a necessary predicate for substantive due process relief.

*Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990).  Accordingly, in the Fifth Circuit, public school students cannot bring claims for excessive corporal punishment as substantive due process violations under § 1983 if the State provides an adequate remedy.  *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 414 (5th Cir. 2021) ("[A]s long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment."); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) ("We have held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage.").

The Fifth Circuit has recognized that Texas provides adequate criminal and civil remedies to plaintiffs like Shields.  *T.O.*, 2 F.4th at 415 ("[W]e have consistently held that Texas law provides adequate, alternative remedies in the form of both criminal and civil liability for school employees whose use of excessive disciplinary force results in injury to students . . . ."); *Marquez*, 567 F. App'x at 217 (noting that "Texas 'afford[s] students post-punishment criminal or civil remedies' if teachers impose more than a reasonable measure of corporal punishment" (quoting *Fee*, 900 F.2d at 808))*; Moore*, 233 F.3d at 875-76 (citing TEX. PENAL CODE § 9.62; TEX. EDUC. CODE § 22.051(a)) (2013)[4] and holding that the remedies available under Texas law preclude plaintiffs' substantive due process claim based on excessive corporal punishment against defendants); *Fee*, 900 F.2d at 810 ("[S]ince Texas has civil and criminal laws in place to proscribe

---

[4] The text of TEX. EDUC. CODE § 22.051(a) (2013) has been moved to TEX. EDUC. CODE § 22.0511 (2025).

educators from abusing their charges, and further provides adequate post-punishment relief in favor of students, no substantive due process concerns are implicated because no arbitrary state action exists.").

Therefore, the court must examine the nature of the conduct that forms the basis of Shields's substantive due process claim.  Shields cannot state a substantive due process claim so far as her pleading is based on conduct that "occurred in a disciplinary, pedagogical setting." *T.O.*, 2 F.4th at 414.  The Fifth Circuit has "allowed substantive due process claims against public school officials to proceed when the act complained of was 'arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.'" *Id.* (quoting *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984)).  As a result, a substantive due process claim may proceed for actions taken in a pedagogical setting when the conduct cannot be characterized as corporeal punishment, but rather constitutes a malicious unprovoked attack.  *Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 510 (5th Cir. 2004).

In *Flores*, the Fifth Circuit described corporal punishment as force that a teacher "reasonably believes to be necessary for a child's proper control, training, or education." *Flores*, 116 F. App'x at 510 (quoting *Ingraham*, 430 U.S. at 661).  "At bottom, fairly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose." *Id.* at 510-11; *see T.O.*, 2 F.4th at 414 (noting that the Fifth Circuit has "consistently dismissed substantive due process claims when the offending conduct occurred in a disciplinary, pedagogical setting" (collecting cases)).

10

The Fifth Circuit has summarized its application of this precedent as follows:

[The Fifth Circuit has] dismissed substantive due process claims (1) when a student was instructed to perform excessive physical exercise as a punishment for talking to a friend, *Moore*, 233 F.3d at 873, 875; (2) when a police officer slammed a student to the ground and dragged him along the floor after the student disrupted class, *Campbell v. McAlister*, 162 F.3d 94, 1998 WL 770706, at *1, *5 (5th Cir. 1998); (3) when a teacher threatened a student, threw him against a wall, and choked him after the student questioned the teacher's directive, *Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 506 (5th Cir. 2004); (4) when an aide grabbed, shoved, and kicked a disabled student for sliding a compact disc across a table, *Marquez*, 567 F. App'x at 215; and (5) when a principal hit a student with a wooden paddle for skipping class, *Serafin v. Sch. of Excellence in Educ.*, 252 F. App'x 684, 685-86 (5th Cir. 2007).

In contrast, . . . [the Fifth Circuit has] held that a substantive due process claim could proceed when a teacher allegedly molested a student, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994), and when a teacher tied a student to a chair for two days as part of an experimental technique, *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305-06 (5th Cir. 1987).

*T.O.*, 2 F.4th at 414.

Shields identifies three instances when Doe was allegedly injured:  two unspecified times when Doe sprained his ankle while under the supervision of Bienvenue and the event that occurred during the May 13, 2022, fire drill wherein Bienvenue hit Doe with a closed fist and pushed him down on the curb.  With respect to Doe's sprained ankle injuries, the pleadings fail to allege how these injuries were sustained, much less explain how Bienvenue caused them.  Shields fails to plead facts that would allow the court to draw the reasonable inference that Bienvenue, or any other defendant, is liable for these injuries.  *See Benfer*, 120 F.4th at 1279.  Accordingly, these events cannot support Shields's substantive due process claim against Bienvenue or Porterie.

With respect to the May 13, 2022, fire drill, Shields's description of Bienvenue's actions fall squarely within the definition of corporal punishment.  Specifically, Shields contends that during a fire drill, Doe was standing apart from his classmates "in the shade of a wall."  The pleading states that Bienvenue instructed Doe to move away from the building and sit with the other students on the curb.  Shields contends that Bienvenue "antagonized [Doe] and began shouting at him, causing [Doe] to become aggressive and grab her.  Defendant, Bienvenue then hit the student with a closed fist and pushed him down on the curb and hit him a second time." Notably, Shields's pleading indicates that Bienvenue was attempting to control Doe by making him sit on the curb with his peers away from the evacuated building, in compliance with PAISD's fire drill procedure.  Accordingly, Bienvenue's actions occurred within a disciplinary context.  "The facts alleged simply do not suggest that [Doe] was the subject of a 'random, malicious, and unprovoked attack.'"  *T.O.*, 2 F.4th at 415.  Accordingly, Shields has failed to state a claim for denial of Doe's substantive due process rights.

### 2.    Fourteenth Amendment Equal Protection

Shields also states that she brings "equal protection claims against Defendants, Porterie and former teacher, Monique Bienvnue in their respective individual capacities."  The Equal Protection Clause of the Fourteenth Amendment provides:  "No State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'"  *Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (emphasis in original) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *accord Johnson v. Collier*, 137 F. 4th 376, 383 (5th Cir. 2025) (quoting *Wood v. Collier*,

12

836 F.3d 534, 538 (5th Cir. 2016)); *Branch v. Harris Cnty. Sheriff's Off.*, No. 24-20120, 2025 WL 636313, at *3 (5th Cir. Feb. 27, 2025).  "Individuals are similarly situated when they are alike in all relevant respects except for their membership in the protected class." *Doe v. Univ. of N. Tex. Health Sci. Ctr.*, No. 23-10764, 2024 WL 3427049 (5th Cir. July 16, 2024).

"A violation of the equal protection clause occurs only when, *inter alia*, the governmental action in question classifies between two or more relevant persons or groups." *Johnson v. Rodriguez*, 110 F.3d 299, 309 (5th Cir. 1997) (quoting *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996)); *see Edwards v. Johnson*, 209 F.3d 772, 780 (5th Cir. 2000); *Mayabb*, 168 F.3d at 870; *accord Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005).  "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a protected class,' . . . or (b) he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Gibson*, 700 F.3d at 238 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see Doe*, 2024 WL 3427049, at *6; *S.B. on behalf of S.B. v. Jefferson Par. Sch. Bd.*, No. 22-30139, 2023 WL 3723625, at *4 (5th Cir. May 30, 2023), *cert. denied*, 144 S. Ct. 562 (2024).

As Defendants point out, Shields simply states that she brings an equal protection claim against Bienvenue and Porterie without providing further discussion or explanation.  Notably, Shields does not list her equal protection claim under the heading "IV. Causes of Action."  Her Second Amended Complaint states that Bienvenue "had a history of engaging in acts of improper abusive nature toward special needs students on campus at Memorial High School," but she fails to provide any factual allegations to show that Doe was treated differently than other students.

13

The only example Shields provides of Bienvenue's conduct toward another SPED student is her allegation that Bienvenue "flipped over a table, almost hitting the student, [took] his backpack, ripp[ed] his papers and [threw] all backpack contents onto the floor while the student was crying and frustrated." Shields does not explain how Doe was treated differently than similarly situated children, nor does she sufficiently allege that Doe was improperly classified or discriminated against because of his disability. Accordingly, Shields's claims based on a violation of the equal protection clause should be dismissed. *See Damond*, 127 F.4th at 938 ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002))); *King*, 46 F.4th at 356 ("[C]ourts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))).

### 3.    First Amendment Retaliation

Shields alleges that Defendants' actions violated her right to free speech guaranteed under the First Amendment to the United States Constitution. *See* U.S. CONST. amend. I. Shields seemingly contends that after she made complaints about Bienvenue to Principal Glenn Mitchell, Defendants retaliated against her and Doe by prohibiting Shields from using the school's back entrance for drop-offs and pick-ups and by purportedly increasing the severity of the abuse against Doe.

"The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976); *see Bigelow v. Virginia*, 421 U.S. 809, 811 (1975); *Cath. Leadership*

14

*Coal. of Tex. v. Reisman*, 764 F.3d 409, 414 n.1 (5th Cir. 2014). For a private citizen to prevail

on a claim of retaliation under the First Amendment, she must show:

>  (1)    [she] was engaged in a constitutionally protected activity;
>
>  (2)    the defendant[s'] actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and
>
>  (3)    the defendant[s'] adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

*Bailey v. Ramos*, 125 F.4th 667, 685 (5th Cir. 2025) (quoting *Keenan v. Tejeda*, 290 F.3d 252,

258 (5th Cir. 2002)); *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015). Defendants assert

that Shields's First Amendment retaliation claim must be dismissed because she fails to establish

the latter two elements. Specifically, Defendants aver that Shields fails to establish that the alleged

adverse actions meet the threshold of materially chilling further speech of a reasonable person and

that her claims that Defendants increased the severity of abuse of Doe are unsupported by specific

factual allegations establishing a causal link.

The Second Amended Complaint fails to articulate coherently when and what Shields

contends she reported to Principal Glenn Mitchell, and what adverse actions Defendants took that

were substantially motivated by her report.[5] Accordingly, the court agrees with Defendants that

---

[5] Specifically, under the heading "First Amendment Retaliation," Shields states: "Shields reported to Memorial Principal Glenn Mitchell, Bienvenue about PD Ibarra, and Bienvenue having claimed to not have property of Does'[sic] when Bienvenue had and hid Doe's phone, Bienvenue embarked upon a course of retribution and revenge against a non-verbal autistic student who had no personal she did [sic], she was retaliated against by Defendants when they prevented her from accessing the backdoor of the school in order to safely and efficiently see her son, and by increasing the severity of the abuse of Doe."

the Second Amended Complaint fails to provide sufficient factual allegations to establish a causal link between Shields's protected activity and alleged adverse action.

In any event, Shields has abandoned this claim. In her response to Defendants' Motion to Dismiss, Shields does not address her cause of action for First Amendment retaliation. Defendants note in their Reply:

> Plaintiff's Response fails to address the deficiencies identified in Defendants' Motion to Dismiss regarding her First Amendment retaliation claim. Plaintiff has not pleaded sufficient factual allegations to establish the essential elements of the claim, including a causal connection between any protected speech and alleged retaliatory conduct. As Plaintiff has failed to state a plausible First Amendment Retaliation claim, Bienvenue and Dr. Porterie are entitled to qualified immunity and dismissal is warranted.

Shields subsequently filed a Sur-Reply, which also fails to address Defendants' contention that her First Amendment retaliation claims should be dismissed. Because Shields did not raise or brief these claims in her responsive briefs, any claims raised by Shields alleging First Amendment retaliation have been waived and are no longer at issue. *See Taylor v. Collier*, No. 22-20398, 2023 WL 8184869, at *2 (5th Cir. Nov. 27, 2023); *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 393 n.28 (5th Cir. 2020); *Shipman v. Sowell*, 766 F. App'x 20, 25 (5th Cir. 2019); *Overshown-Nunez v. City of Houston*, No. 4:24-CV-2455, 2025 WL 863478, at *2 (S.D. Tex. Feb. 27, 2025), *adopted by* 2025 WL 862035 (S.D. Tex. Mar. 19, 2025) (holding that the plaintiff "failed to cite any authority supporting such a claim and therefore waived the claim for failure to adequately brief it"); *Macias v. Texas*, No. 2:23-CV-00043, 2024 WL 1174178, at *5 (S.D. Tex. Mar. 18, 2024) (finding that the plaintiffs waived an issue that they did not raise "in response to the motions to dismiss"); *Watson v. FedEx Express*, No. 3:22-CV-01738-B-BT, 2023 WL

16

4534965, at *2 (N.D. Tex. June 26, 2023), *adopted by* 2023 WL 4533923 (N.D. Tex. July 13, 2023), *aff'd*, No. 23-10806, 2024 WL 340817 (5th Cir. Jan. 30, 2024), *cert. denied*, 145 S. Ct. 299 (2024) ("Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level."). Therefore, dismissal of Shields's First Amendment retaliation claims as to all Defendants is warranted.

      C.    <u>Americans with Disabilities Act ("ADA")</u>

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *accord Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 513-14 (5th Cir. 2024) ("Title II of the ADA protects the rights of all individuals with disabilities, banning discrimination by public entities, including schools."). To establish a prima facie case under Title II of the ADA, a plaintiff must show:

    (1)    that he is a qualified individual . . . ;

    (2)    that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and

    (3)    that such exclusion, denial of benefits, or discrimination is by reason of his disability.[6]

---

[6] Shields asserts a cause of action under the ADA only. "Claims brought under § 504 [of the Rehabilitation Act] or the ADA, or both, are subject to the same analysis." *T.O.*, 2 F.4th at 416. "The only material difference between the two provisions lies in their respective causation requirements." *Id.* at 416-17 (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)). Accordingly, "[c]ases concerning either section apply to both." *Id.* at 417 (quoting *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Tr.*, 855 F.3d 681, 690 (5th Cir. 2017)).

*J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (quoting *T.O.*, 2 F.4th at 417), *cert. denied*, 144 S. Ct. 2658 (2024).  "A plaintiff need not identify an official policy to sustain such a claim, and a public entity may be held vicariously liable for the acts of its employees under [the ADA]." *T.O.*, 2 F.4th at 417; *accord J.W.*, 81 F.4th at 449.  "Evidence of intentional discrimination is necessary to support a claim for monetary damages, but a plaintiff seeking only equitable relief may succeed on a disparate impact theory." *T.O.*, 2 F.4th at 417; *accord J.W.*, 81 F.4th at 449-50 (*"Plaintiffs can only recover damages under the ADA . . . upon a showing of intentional discrimination."*); *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 483 (5th Cir. 2021).

The parties do not dispute that Doe is a qualified individual under the ADA.  To state a claim based on a school district's failure to make reasonable accommodations for disability, "[t]he complaint must allege facts sufficient to plausibly claim 'that the school district . . . refused to provide reasonable accommodations for [the student] to receive the full benefits of the school program.'"  *Bryant v. Dayton Indep. Sch. Dist.*, No. H-21-1547, 2021 WL 3555947, at *7 (S.D. Tex. August 11, 2021).  Here, the Amended Complaint claims that the alleged abuse of Doe "was so severe, pervasive, and objectively offensive that it deprived [Doe] of educational opportunities or benefits provided by the school."  The Amended Complaint, however, does not contend that PAISD refused to provide any reasonable accommodations to Doe.  Instead, Shields appears to assert either a disparate treatment claim or a hostile educational environment claim against PAISD based on Bienvenue's alleged physical abuse of Doe.

A plaintiff raises a disparate treatment claim by alleging he was treated less favorably than others because of a protected characteristic. For such a claim to survive Rule 12(b)(6) review, a plaintiff must plausibly allege the disparate treatment was "motivated by" or "by reason of" the plaintiff's disability. *S.B. on behalf of S.B.*, 2023 WL 3723625, at *4.

The Fifth Circuit has stated that to plead a claim for a hostile educational environment under § 504 of the Rehabilitation Act, a plaintiff must allege the following[7]:

    (1)     [The student] was an individual with a disability,

    (2)     [The student] was harassed based on his disability,

    (3)     [T]he harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment,

    (4)     [The defendant] knew about the harassment, and

    (5)     [The defendant was] deliberately indifferent to the harassment.

*C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist.*, 641 F. App'x 423, 426 (5th Cir. 2016); *accord D.M.*, 2025 WL 50609, at *6 (quoting *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014)); *Bryant v. Dayton Indep. Sch. Dist.*, No. H-21-1547, 2021 WL 3555947, *8 (S.D. Tex. Aug. 11, 2021).

---

[7] It is unclear whether the Fifth Circuit recognizes a hostile educational environment claim under the ADA premised upon student harassment by school employees. *See Harrison*, 856 F. App'x at 487 n.6 ("Because we find the deliberate indifference element unmet here, we need not determine whether our precedent supports a hostile educational environment claim under the ADA or Rehabilitation Act."); *see also D.M. v. Duncanville Indep. Sch. Dist.*, No. 3:24-CV-00606-N, 2025 WL 50609, at *6 n.2 (N.D. Tex. Jan. 7, 2025).

Thus, both a disparate treatment claim and a hostile educational environment claim require the plaintiff to plead specific facts that would suggest that he was discriminated against based on his disability. Shields summarily alleges:

> The above described abuse of [Doe] was a form of discrimination because the abuse was based on his disability and was so severe, pervasive, and objectively offensive that it deprived [Doe] of educational opportunities or benefits provided by the school.

Notably absent from the Second Amended Complaint, however, are any facts supporting an inference that the alleged abuse was motivated by or by reason of Doe's disability. *See Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1034 (5th Cir. 2022) ("The plaintiff must plead facts making it plausible that he was discriminated against because of—but not necessarily solely because of—his disability." (internal quotations omitted)).

In a similar case, *S.B. on behalf of S.B.*, the Fifth Circuit affirmed a district court's dismissal of a disability discrimination claim for failure to plead specific facts that would suggest any of the defendants were motivated by the student's disability. 2023 WL 3723625, at *1. In that case, S.B. was an eleven-year-old girl with autism. Because of her autism, S.B. occasionally exhibited inappropriate conduct, such as pinching and kicking. *Id*. Her lawsuit stemmed from two incidents. *Id*. The first incident occurred after S.B. refused to clean up puzzle pieces and kicked at the behavioral technician when she tried to help. *Id*. The behavioral technician slapped S.B.'s wrists and scolded her for kicking, stating "No, ma'am! No kicking!" *Id*. Second, after S.B. pinched a special needs paraprofessional ("SNP"), the SNP "grabbed S.B.'s hand and slapped the top of it, saying, 'We do not pinch our friends!'" *Id*. S.B.'s pleading alleged that the behavioral technician and SNP "'have supervised other students without disabilities or with

different disabilities who were acting inappropriately or violently' but 'did not slap any of those students.'" *Id.* at *2. The Fifth Circuit held that, "[a]lthough S.B.'s autism was the root cause of her classroom outbursts, it cannot be inferred that [the behavioral technician and SNP's] reactions were influenced by her disability. Rather, these claims suggest that S.B. wasn't disciplined due to her disability but to address her disruptive conduct in class." *Id.* at *4. The Fifth Circuit explained that "punishing S.B. for her disruptive behavior is not the same as treating her differently due to her disability." *Id.*

As discussed above, the Second Amended Compliant in this case specifically identifies one instance of alleged abuse: when Bienvenue allegedly struck Doe with her first two times during a school fire drill. Specifically, the faculty and students had evacuated the building and the students were "sitting on the curb" outside. Bienvenue required Doe to move away from a wall and sit with his classmates. As stated by Shields, "Bienvenue antagonized [Doe] and began shouting at him, causing the student to become aggressive and grab her. Defendant, Bienvenue then hit the student with a closed fist and pushed him down on the curb and hit him a second time." The facts as stated by Shields indicate that Doe "wasn't disciplined due to [his] disability but to address her disruptive conduct [at school]." *S.B. on behalf of S.B.*, 2023 WL 3723625, at *4; *see*, *T.O.*, 2 F.4th at 417-18 (holding that plaintiff failed to state a claim of disability discrimination under the ADA because none of the factual allegations contained in the complaint permitted the inference that the student was discriminated against because of his disability). In sum, the Second Amended Complaint contains no factual allegations that permit the inference that Bienvenue's actions were "by reason of his disability"—an essential element of a discrimination claim. Accordingly, Shields has failed to state a claim of disability discrimination under the ADA.

D.    State Law Causes of Action

Federal courts may hear pendent state law claims under 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related" such that "they form part of the same case or controversy." 28 U.S.C. § 1367. Shields's § 1983, ADA, and state law claim for intentional infliction of emotional distress against Bienvenue "form part of the same case or controversy." Nonetheless, § 1367(c)(3) provides that a "district court[] may decline to exercise supplemental jurisdiction" if, *inter alia*, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "So although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). Thus, while "neither mandatory nor absolute," "the general rule [is] that 'a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.'" *Heggemeier v. Caldwell County*, 826 F.3d 861, 872-73 (5th Cir. 2016) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). The Fifth Circuit "elucidated th[is] general rule" based on "common law factors of judicial economy, convenience, fairness, and comity." *Heggemeier*, 826 F.3d at 872 (quoting *Enochs v. Lampasas County*, 641 F.3d 155, 158-59 (5th Cir. 2011)). Thus, because this court has determined that all of Shields's federal claims should be dismissed, this court declines to exercise supplemental jurisdiction over her state law claim for intentional infliction of emotional distress. *See Royal Canin U.S.A., Inc.*, 604 U.S. at 32; *Kemp v. Powers*, No. 25-30024, 2025 WL 1898365, at *6

22

(5th Cir. July 9, 2025) ("Because all of the plaintiff's federal claims were properly dismissed, the court's decision to decline jurisdiction over his state law claims was not an abuse of discretion.").

III.    Conclusion

Shields has failed to state a claim under § 1983. Her substantive due process claim is based on conduct that is properly characterized as corporeal punishment for which adequate state law remedies exist. Accordingly, under Fifth Circuit precedent, Doe's injuries do not implicate the due process clause. Further, Shields's claims based on violation of the equal protection clause amount to no more than conclusory allegations that are insufficient to overcome Defendants' motion to dismiss. Similarly, Shields fails to allege sufficiently a cause of action based on first amendment retaliation; furthermore, she has abandoned this claim by failing to raise it in her response to Defendants' motion to dismiss. As for Shields's claims of disability discrimination under the ADA, she has failed to allege plausibly that the actions about which she complains were motivated by Doe's disability. Finally, the court declines to exercise supplemental jurisdiction over Shields's state law claim for intentional infliction of emotional distress against Bienvenue. Accordingly, Defendants' Motion to Dismiss (#26) is GRANTED. Shields's action against PAISD, Porterie, and Bienvenue is DISMISSED.

SIGNED at Beaumont, Texas, this 10th day of September, 2025.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE